Roy O. **HOFFMAN**, Regional Director of the Twentieth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**INTERNATIONAL TYPOGRAPHICAL UNION LOCAL NO. 37, AFL–CIO,** Respondent.

Civ. No. 2370.

United States District Court
D. Hawaii.

June 15, 1965.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Julius G. Serot, Asst. General Counsel, Harvey Letter, Regional Atty., Region 20, Walter N. Moldawer, Dennis R. MacCarthy, Honolulu, Hawaii, for petitioner.

Edward H. Nakamura, Bouslog & Symonds, Honolulu, Hawaii, for respondent.

PENCE, Chief Judge.

The International Typographical Union Local No. 37, AFL–CIO (Union), in support of its strike against the Hawaii Press Newspapers, Inc. (Press), on March 12, 1965, commenced picketing at the entrance of the International Market Place, a market complex in Waikiki. While the picket signs named only six shops within the 50-shop complex, namely, Don the Beachcomber's Colonel's Plantation, Cock's Roost Broiler and Bar, Pex of Hawaii, Market Jewelers, Colonial House Cafeteria and Gourmet Bazaar,

because those shops then currently advertised in the Waikiki Beach Press, a publication of Press, handbills appealing to the public: "Do Not Patronize This Establishment", without naming the "Establishment", were concurrently distributed.

Both parties agree that a temporary injunction should issue pending a determination of the facts by the National Labor Relations Board (NLRB); however, the parties do not agree as to the scope of that injunction. The petitioner avers the court should enjoin threats, coercion and restraint of advertisers "by picketing, appealing to consumers not to patronize advertisers or not to buy products from advertisers \* \* \*", while it is the contention of the respondent that the language "not to buy products from advertisers" should be eliminated.

In focus here is Section 8(b) (4) (ii) (B) of the Labor-Management Relations Act of 1947, as amended, which in pertinent substance provides that it is an unfair labor practice for a labor organization to force, coerce or require any person to cease doing business with or buying the products of another producer unless the picketing, etc., shall be primary in nature.

However, a proviso of this section permits publicity, other than picketing, for the purpose of truthfully advising the public, including consumers, that a product or products sold by the secondary employer are produced by a primary employer with whom the labor organization has a dispute, as long as delivery of goods and services to the secondary employer are not interrupted.

■■ The Supreme Court in National Labor Relations Board v. Fruit Packers, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964), fully analyzed the legislative history and application of the above provisions of the Act. There, a strike was called against firms selling Washington State apples to the Safeway chain of retail stores. The union then proceeded to picket the Safeway stores, appealing to the consumers only that they not purchase Washington State apples in the stores. The Court concluded that not all peaceful picketing of secondary employers was sought to be proscribed by Congress. The conduct proscribed is the picketing of secondary employers to persuade customers to cease trading or doing business with *them* and thereby force the secondary employers to cease dealing with or put pressure on the primary employer. This conduct is to be distinguished from that of merely appealing to the consumers not to purchase the goods of the primary employer by way of peaceful picketing at the secondary site. As the Court said (p. 72, 84 S.Ct. p. 1071):

"When consumer picketing is employed only to persuade customers not to buy the struck product, the union's appeal is closely confined to the primary dispute. The site of the appeal is expanded to include the premises of the secondary employer, but if the appeal succeeds, the secondary employer's purchases from the struck firms are decreased only because the public has diminished its purchases of the struck product. On the other hand, when consumer picketing is employed to persuade customers not to trade at all with the secondary employer, the latter stops buying the struck product, not because of a falling demand, but in response to pressure designed to inflict injury on his business generally. In such case, the union does more than merely follow the struck product; it creates a separate dispute with the secondary employer."

■ In the instant case we do not have the situation of a "super market" and picketing of a particularized product as appeared in the Fruit Packers case, supra. Here, the secondary employers, Don the Beachcomber's Colonel's Plantation (a steak house), the Cock's Roost (steaks and ribs), Colonial House Cafeteria (low priced home-style meals), the Gourmet Bazaar (polynesian art crafts and liquors), and Pex of Hawaii and Market Jewelers (jewelry), did not sell any of the Press's papers or advertise any

specific products in the Press—their advertisements just referred to their own general businesses. Nevertheless, the picket legends named the above shops and appealed to the public: "Do Not Purchase Their Products Advertised In The Struck Waikiki Beach Press."

As The Court said in Fruit Packers, supra:

"[A] union appeal to the public at the secondary site not to trade at all with the secondary employer goes beyond the goods of the primary employer, and seeks the public's assistance in forcing the secondary employer to cooperate with the union in its primary dispute." (Pp. 63–64, 84 S.Ct. pp. 1066, 1067)

The picketing here was not directed at any struck product, but rather was clearly used to persuade the customers of the named establishments (secondary employers) to cease trading altogether with them in order to force them to cease dealing with, or to put pressure upon, the primary employer, Press. This is the precise evil sought to be eliminated by the provisions of the Act.

The language "or not to buy products from the advertisers" must be included in the injunction.